[No. 10914.  *En Banc.*  February 14, 1913.]

THE STATE OF WASHINGTON, *on the Relation of J. H. McCallum et al., Plaintiff,* v. THE SUPERIOR COURT FOR COWLITZ COUNTY *et al., Respondents.*[1]

INTOXICATING LIQUORS—LOCAL OPTION — ELECTIONS — CONTESTS— REVIEW—JURISDICTION—CERTIORARI.  In view of Rem. & Bal. Code, § 6313, providing for contesting the validity of local option elections and conferring upon the superior court final jurisdiction to determine the merits, a judgment of the superior court dismissing an action to declare a local option election null and void cannot be reviewed on the merits in the supreme court by writ of certiorari.

SAME—CONTEST OF ELECTION—COURTS—JURISDICTION.  As a local option election affects the public and not private interests, and determination of contests belongs to the political rather than the judicial branch of the government, the legislature has the power to confer final jurisdiction of election contests upon the superior court, notwithstanding the constitutional provision vesting in the supreme court the power to issue writs of review.

Application for a writ of certiorari to review a judgment of the superior court for Cowlitz county, McKenney, J., entered December 7, 1912, dismissing an action to nullify a local option election.  Denied.

*Gus L. Thacker* and *Hayden & Langhorne,* for relators, contended, among other things, that the legislature has not the power to infringe upon the constitutional provision vesting in the supreme court the power to issue writs of review. *Rash v. Allen* (Del.), 76 Atl. 370 ; *Seattle & M. R. Co. v. Bellingham Bay & E. R. Co.,* 29 Wash. 491, 69 Pac. 1107, 92 Am. St. 907 ; *Independence Party Nomination,* 208 Pa. St. 108, 57 Atl. 344 ; *In re Foy's Election,* 228 Pa. 14, 76 Atl. 713 ; *Dinsmore v. Mayor etc. of Manchester* (N. H.), 81 Atl. 533. Certiorari will issue where there is no right to appeal or where the proceeding is unknown to the common law and of a summary character and of judicial or *quasi* judicial nature.  6

[1]Reported in 129 Pac. 900.

Cyc. 739; 15 Cyc. 439. *In re Foy's Election* and *Seattle &
M. R. Co. v. Bellingham Bay & E. R. Co.*, *supra; Common-
wealth ex rel. Whitman v. Ramsay*, 166 Pa. St. 642, 31 Atl.
345; *State ex rel. Board of Com'rs of St. Louis County v.
Dunn*, 86 Minn. 301, 90 N. W. 772; *State ex rel. Heller v.
Lawler*, 103 Wis. 460, 79 N. W. 777; *State ex rel. Wood
County v. Dodge County*, 56 Wis. 79, 13 N. W. 680; *State ex
rel. Moreland v. Whitford*, 54 Wis. 150, 11 N. W. 424. The
filing of a petition within the time limited is a condition pre-
cedent to the holding of a valid election. 23 Cyc. 95, 96; *In re
Krieger*, 59 App. Div. 346, 69 N. Y. Supp. 851. The failure
of the officers to place upon the ballot the proposition required
by statute is fatal to the election. 15 Cyc. 349; 1 Woollen and
Thornton, Law of Intoxicating Liquors, § 534; *People ex
rel. Beasley v. Town of Sausalito,* 106 Cal. 500, 39 Pac. 937;
*Williams v. Shoudy*, 12 Wash. 362, 41 Pac. 169; *People ex
rel. Caffrey v. Mosso,* 30 Misc. Rep. 164, 63 N. Y. Supp.
588.

*O'Neil & Spaulding* and *Percy P. Burch,* for respondents.

Morris, J.—Writ of certiorari to review the judgment of
the lower court in an election contest, involving the validity
of an election in the city of Castle Rock, to determine whether
said city should license the sale of intoxicating liquors. The
following facts will be sufficient for a proper understanding
of the question submitted for our determination. On Novem-
ber 5, 1912, a local option election was held at Castle Rock,
the result of which was in favor of no-license. On November
21, 1912, relators commenced a proceeding in the lower
court, alleging various irregularities under which they
charged the election was illegal, and praying the lower court
to restrain the city clerk from entering and publishing the
result of the election, and for a decree declaring the election
to be null and void. In this proceeding an answer was filed,
putting the allegations of the petition in issue, and in due
time a hearing was had in the lower court, when, after a full

hearing upon the merits of the controversy as presented by the petition and answer, the lower court denied the prayer of the petition and dismissed the action.

Thereupon relators came to this court and sued out this writ, under which they seek to have us review the determination of the lower court upon the merits.

Respondents appeared upon the return day and moved to quash the writ and dismiss the proceedings here, upon the ground that no jurisdiction is vested in this court to review the judgment of the lower court upon the merits. This motion must be granted. Section 6313, Rem. & Bal. Code, which is § 22 of the local option law of 1909, provides for contesting the validity of local option elections, confers jurisdiction over such election contests in the superior court for the proper county, and further provides that, "the said court shall have final jurisdiction to hear and determine the merits of such cases." Answering this contention, relators assert that, inasmuch as under our constitution this court is vested with the power to issue writs of review to the complete exercise of its appellate and revisory jurisdiction, the right of review is constitutional and not statutory, and a jurisdiction which is constitutional cannot be taken away by statute. In discussing this question, we confine ourselves to the character of the cases involved in the local option law, and do not mean to hereby express any opinion as to general suits at law or actions in equity involving common law rights.

Whatever may be said as to the right of the legislature to limit the jurisdiction of this court in actions involving property rights or personal liberty where no appeal is given, no such question is presented under the facts in this case. Nor does it, in our opinion, fall within that rule announced by some courts that writs of error will lie from appellate to inferior courts for the purpose of reviewing their final determination in all cases involving property rights or personal liberty where no appeal is given, and that this right exists, independently of any statutory or constitutional provisions, by

force of the common law, in all cases in which the jurisdiction of such inferior court is exercised according to the course of the common law. The questions here involved, and to which the act in question is devoted, are public rather than private rights, and determine the manner in which the public will shall be finally ascertained, in questions purely of a public nature and not involving an attempt to determine property rights or restrain personal liberty. The determination of these questions is one of undoubted legislative power, and belongs to the political rather than the judicial branch of state government. It has, we think, been universally held that an election contest, such as this proceeding was, as brought in the lower court, is not an ordinary adversary proceeding. *Minor v. Kidder*, 43 Cal. 229. The public is concerned, and it is the public interests that are to be determined, and hence the rule has become established that elections are beyond the control of the judicial power, and that the determination of election contests is a judicial function only to the extent authorized by statute. These rules are so well established no authority will be required to sustain them. Hence, we find numerous cases holding that, where the legislature had committed the final decision of the removal of county seats or questions of a similar nature to public officials or trial courts, the appellate court was thereby deprived of the right to review such decision. *Coon v. Mason County*, 22 Ill. 666; *Moore v. Mayfield*, 47 Ill. 167; *Loomis v. Hodson*, 224 Ill. 147, 79 N. E. 590; *Heffner v. Board of County Com'rs*, 16 Wash. 273, 47 Pac. 430.

This, of course, does not mean that, under constitutional authority such as is conferred upon this court in the issuance of its writs to inferior tribunals, appellate courts may not issue writs of review to determine whether such tribunal is exercising its power according to law, or is acting within or without its jurisdiction. We have repeatedly issued such writs in proceedings under this same law where the question involved the sufficiency of the petition, or other like matter,

affecting the jurisdiction of the lower court, such as in, *State ex rel. Quillen v. Superior Court,* 70 Wash. 343, 126 Pac. 899; *State ex rel. Griffin v. Superior Court,* 70 Wash. 545, 127 Pac. 120; *State ex rel. Czerny v. Superior Court,* 70 Wash. 592, 127 Pac. 207; *State ex rel. Forgues v. Superior Court,* 70 Wash. 670, 127 Pac. 313. In none of these cases, however, were we called upon to exercise a revisory jurisdiction in the nature of an appeal from the determination of the lower court upon the merits of the controversy. The *Griffin* case submitted the question whether a city election was the "last general election" within the meaning of the law, as determining the number of required signatures to a petition calling an election. The other cases involved the sufficiency of the petition under which the jurisdiction of the lower court was invoked. It might be added that in none of them was any question raised as to our full and complete jurisdiction.

The cases cited by relators, and under which their counsel strenuously contend for the exercise of our jurisdiction, are, it seems to us, when properly read, authority against the assumption of such jurisdiction. In *Independence Party Nomination,* 208 Pa. 108, 57 Atl. 344, it is said, in a case involving the right of the Independence party to a separate column of nominations on the official ballot:

"The case having been brought to this court by certiorari, the first question is our jurisdiction. The proceeding being entirely statutory and without appeal, we cannot review the findings of fact or the merits of the case; but, under the general supervisory powers of the court on certiorari we are entitled to inspect the whole record with regard to regularity and propriety of the proceedings, to ascertain whether the court below exceeded its jurisdiction or its proper legal discretion;"

citing *In re Pollard's Petition,* 127 Pa. St. 507, 17 Atl. 1087, involving the granting of wholesale licenses for the sale of liquors where such matters were specially committed to the court of quarter sessions, and where it was said:

"Upon the writ of certiorari we may review their proceedings so far as to see whether they have kept within the limits of the powers thus conferred, and have exercised them in conformity with law."

These cases are authority for our assumption of jurisdiction in the four cases involving this law where we have accepted jurisdiction, but they hardly go as far as to say that, because jurisdiction is vested in appellate courts by the constitution of the state to issue writs in aid of appellate or revisory jurisdiction, in cases involving no private rights, which are purely statutory in their nature, with the denial of the right of appeal, the appellate court may accept jurisdiction under its revisory writ, and make such writ a medium for a review of the merits of a controversy, presenting no constitutional or jurisdictional questions.

Another case relied upon by relators is *Rash v. Allen*, 1 Boyce (Del.) 444, 76 Atl. 370, an election case involving the rights of the parties to a seat in a city council. The act construed provided that the decision of the city council in such cases should be "final and conclusive." A writ of certiorari was sued out, under which it was sought to test the constitutionality of the law vesting the city council with sole jurisdiction and the validity of its judgment, because the record disclosed that, in hearing and determining the case, the council did not proceed in the manner prescribed by law. The right to the writ being questioned, it was held that, since the power to issue the writ was conferred by the constitution, such right could not be taken away by statute; a rule which will be readily subscribed to. But that the court intended thereby to assert that, because of its constitutional authority in the exercise of its writ of certiorari, it assumed full power of reviewing the judgment below on the merits, as though no question had been suggested as to its power to so review upon an appeal, can hardly be claimed from the language of the decision, for it is said, after reviewing *State v. Wilmington City Council*, 3 Har. (Del.) 294, where mandamus had issued com-

manding the city council to admit one John Hogany to the office of city treasurer, and it was held that the right to issue writs of mandamus could not be taken away, "but by express exclusive words :"

"We cannot believe that in the case above mentioned the court meant to declare that the constitutional power to issue a writ of certiorari for the purpose of determining whether the city council had jurisdiction of a contested election case could be taken away by statute, no matter how 'express and exclusive' the words might be. If the court had in mind the constitutional authority vested therein, they must have meant 'express exclusive words' of as high authority as the power given, to wit, of the constitution. . . . What did the Legislature mean by the statutory provision that the decision of the city council should be final and conclusive? Manifestly it meant that such decision should be final and conclusive so far as the merits of the case are concerned; that is, as to the question the council was to determine—the election that might be contested. It could not have meant, or intended, that the proceedings of the council could not be reviewed by the appellate tribunal for the purpose, or to the extent, of ascertaining whether the council had jurisdiction of the cause, had exceeded its jurisdiction, or had not exercised the same according to law. To hold otherwise would be to make the city council superior to the constitution of the state, and to vest it with powers greater than any court of limited jurisdiction, or any inferior tribunal, in this state has ever possessed. It would enable the council to hear and determine an election case without notice of any kind, without due process of law, without jurisdiction, and indeed in absolute disregard of the rights of the contestee, constitutional or otherwise. Such arbitrary and unlimited power would be not only dangerous, but it is inconceivable and impossible under our system of government. But the words 'final and conclusive' in the statute, have some meaning. What is it? It is simply this: That the action and decision of the council shall not be reviewable so far as the merits are concerned. It did not mean that it might not be reviewed to the extent of ascertaining whether the council had jurisdiction, had acted in excess of its jurisdiction, or exercised the same contrary to law. This we hold to be the law, and our conclusion is amply

supported by authority as well as reason. 4 Ency. Pl. and Pr. 12, 73; *Commissioners v. Thompson,* 15 Ala. 133 and 18 Ala. 694; *Peters v. Peters,* 8 Cush. (62 Mass.) 537; *Cardiffe's Case,* 1 Salk. 146; *Niblow v. Post,* 25 Wend. 280, 15 Cyc. 395-6-7."

Thus it will be seen that the rule there announced is in harmony with our prior assumption of jurisdiction in cases under the local option law. We have assumed jurisdiction for the purpose of ascertaining whether the lower court had acted within its jurisdiction or exercised the same contrary to law. We decline, as here, to accept jurisdiction where no question is raised involving the jurisdiction of the court below, and the only thing required of us is to review the merits of the controversy as determined by the lower court acting under a conceded jurisdiction. We do not feel called upon to say more. To accept jurisdiction in this case is to read out of the law the provision that the superior court should "have final jurisdiction to hear and determine the merits of such cases," a provision within the power of the legislature to include in granting a statutory right of action and naming the tribunal that should exercise jurisdiction over that right of action, in a case involving only a political and not a private right.

The motion to quash is granted.

CROW, C. J., PARKER, MOUNT, MAIN, FULLERTON, and ELLIS, JJ., concur.

GOSE, J., concurs in the result.