[No. 29937.   Department Two.   July 25, 1946.]

*In the Matter of the Estate of* E. A. WITTE, *Deceased.*[1]

*G. E. Lovell,* for appellant.

*John D. Evans* and *W. L. LaFollette,* for respondents.

[1]Reported in 171 P. (2d) 183.

JEFFERS, J.—This proceeding involves the estate of E. A. Witte, who died testate in Whitman county, Washington, on January 9, 1942. This estate was heretofore before this court, and the opinion will be found in *In re Witte's Estate*, 21 Wn. (2d) 112, 150 P. (2d) 595. We shall briefly refer to the prior case and the opinion above referred to, as they have a direct bearing on the questions presented in the instant appeal.

E. A. Witte died testate in Whitman county on January 9, 1942. On January 13th following, an instrument purporting to be his last will and testament was filed with the clerk of the superior court for Whitman county. This will stated that all the property of which the testator died possessed was his separate property, and, with the exception of five thousand dollars in cash bequeathed to Mary Witte, his widow, Mr. Witte devised all of his property of every kind and nature to his three children, Adam Witte, Clarence Witte, and Eva Kerns. It may be stated here that these were also Mrs. Witte's children.

At the time the will was admitted to probate, January 26, 1942, Mrs. Witte was present in court and represented by counsel, and was intending to institute a contest proceeding, upon the theory that the greater part of the Witte estate was community property. In order to obviate such contest, she and her three children, personally and through their respective attorneys, in open court, entered into a written stipulation, the material provisions of which are set out on page 116 of *In re Witte's Estate, supra.*

Thereafter the executor of the Witte estate caused the property of the estate to be inventoried and appraised, the appraised value of the realty being $93,275, and the personal property $172,563.26, or a total of $265,838.26.

On June 9, 1943, the executor filed its final account and report and petition for distribution. It was stated in the final account that, in addition to the ordinary services involved in probate proceedings, both the executor and its attorneys had expended much time in adjusting the inheritance tax matter and in compromising difficulties between the surviving spouse and the heirs, and that, through

the efforts of the executor and its attorneys, all differences to the date thereof had been compromised and adjusted and the estate saved the cost of long litigation. It was further stated that a compromise agreement was entered into by all the parties in open court, in order to settle all controversies. The stipulation heretofore referred to was then set out.

A supplemental report was filed on December 13, 1943, showing the value of the estate $185,870.49, to be divided four ways, and that, in accordance with the above stipulation, there should be paid to Mary Witte one fourth thereof, or $46,467.62. It clearly appears that distribution of the estate was asked for on the basis of the above stipulation.

On September 20, 1943, Mary Witte filed an amended bill of exceptions to the final account, wherein she stated that all of the property left by the deceased, except approximately five hundred acres of land, inventoried at $44,010, was the community property of the deceased and petitioner, and that, in addition, certain property which she listed should have been inventoried and set out in the final account. She excepted to the payment of any state taxes in excess of fourteen thousand dollars, and to the payment of any Federal taxes in excess of forty-three thousand dollars, and excepted to the payment to her of any sum less than one hundred thousand dollars. It will be noticed that no exception was taken to the stipulation above referred to, and no contention was made that the parties were not bound by the stipulation, or that the court was without jurisdiction to enter a decree of distribution in accordance therewith.

The final account and report and petition for distribution, the supplemental report, the amended bill of exceptions to the final account, and the answers thereto by the executor, came on for hearing, at which time witnesses were sworn and documentary evidence received; and thereafter the court made and entered findings of fact and conclusions of law in regard to the issues raised and, on the same day, December 13, 1943, made and entered a decree

of distribution and order approving final report and supplemental account.

We shall not set out the findings of fact or the decree of distribution, other than to refer to some parts thereof, as the record hereinbefore referred to was all before this court in the former appeal (*In re Witte's Estate, supra*). However, because of the questions raised by the present appeal, we call attention to the following findings of fact made by the trial court, upon which certain parts of the decree of distribution in the former proceeding were based.

The court found that, by stipulation entered into in writing in open court on January 26, 1942, and made a part of the proceedings, Mary Witte agreed to accept as her full share of the estate one fourth of the net estate, excluding lands owned by E. A. Witte at the time of his marriage to Mary Witte and lands inherited by him, and less inheritance taxes, claims, income taxes, and costs of administration, such one fourth to include the five thousand dollars bequeathed to her by decedent, payment of such share to be in cash. The court found that Mary Witte was entitled to receive the sum of $46,467.62 in cash as her full distributive share of the estate.

The court further found that certain real estate (describing it) should, by virtue of E. A. Witte's will and the stipulation, be distributed to the three children above named, share and share alike; that all the property of every kind and nature of which E. A. Witte died possessed, including the property set forth in the inventory, was the separate property of the deceased at the time of his death.

The decree of distribution filed on December 13, 1943, was made pursuant to the will and the stipulation, and in accordance with the findings of fact and conclusions of law hereinbefore referred to. Mrs. Witte appealed from the decree of distribution and order approving the final account and report and supplemental account, and the matter came before this court, as appears from the decision hereinbefore referred to in *In re Witte's Estate, supra*.

As shown by appellant's brief in the former appeal (No. 29341 of the records of this court), appellant raised the

following questions: (1) Was the property inventoried in the E. A. Witte estate separate or community? (2) Should the real estate given by E. A. Witte to his children between 1932 and 1942, be inventoried in the estate? (3) Should the executor be charged with the overpayment of taxes?

Again we call attention to the fact that, on the former appeal, no question was raised as to the stipulation, although the decree of distribution from which the appeal was taken had distributed the property in accordance with the stipulation.

The opinion of this court on the former appeal recognized the validity and binding force of the stipulation, and that thereunder Mrs. Witte was entitled to one fourth of the net value of the estate in cash, as inventoried, whether the property should ultimately be determined to be the separate property of E. A. Witte or community property of E. A. Witte and Mary Witte. The opinion specifically states, beginning at p. 124:

"Appellant's [Mrs. Witte's] first contention is that the trial court should have held that all of the property acquired by Mr. Witte and all of the assets of the estate, *as inventoried,* with the exception of the land owned by Mr. Witte at the time of his marriage and that inherited by him from his mother, were community property, and *that under the written stipulation* [italics ours] referred to above she was entitled to a one-fourth part of the community property, payable in cash. . . .

"Inasmuch as Mrs. Witte will, in any event, receive a one-fourth part of the net estate *as inventoried,* this contention is important only because of its bearing on her other contentions.

" . . . We hold, however, that the net estate *as inventoried* should have been distributed as community property, not as separate property. . . .

"Respondent also contends that appellant, having elected to take under the will, is now bound by that election. But Mrs. Witte did not actually take anything under the will. To the contrary, she effectually relinquished the five thousand dollar bequest provided for in the will, when by her stipulation she agreed to take instead one-fourth of the entire net estate. *That is what she is asking now* [italics ours]."

The opinion further states:

"Her second assignment is that the real estate standing in the names of the three children, but purchased with funds supplied by Mr. Witte, should have been inventoried in the estate. This question was not passed upon by the trial court for the reason that it had already decided that the entire estate was Mr. Witte's separate property.

"Appellant does not here contend that she is at this time entitled to a decree awarding her a one-fourth interest in those specific properties, but merely that she is entitled, under the showing reflected by the record, to have those properties, or the community's interest therein, *inventoried in the estate and their title determined.* We think her position is well taken. The evidence submitted to the court was at least sufficient to make a *prima facie* case of the fact that these properties, or some interest therein, belonged to the estate. The court should therefore have required the executor to inventory them or the interest of the estate therein and in some appropriate action determine the title thereto before entering a final decree of distribution.

"By her third assignment of error appellant contends that the executor should be charged with overpayment of taxes to the Federal and state governments. The facts underlying that contention have already been stated. That question, likewise, was never reached nor decided by the trial court, for the reason already given. . . . We therefore will not pass upon the question until the superior court has made its decision thereon." (Italics ours.)

The decree was reversed, with direction to the trial court to proceed further in a manner consistent with the views expressed in the opinion.

After the remittitur in the prior appeal went down, Mary Witte filed in the lower court a motion to set aside the stipulation, alleging as a ground therefor that Adam Witte, Clarence Witte, and Eva Kerns, and their attorneys, Wilkinson & Evans, represented to appellant that Ernest Witte (E. A.) had signed the will, but in truth and in fact the will was signed by *Ernest Witter,* and Ernest Witte never signed his name; that, by reason of such fraudulent representation, appellant was induced to sign the so-called stipulation, and, if these representations had not been

made to her, she would not have signed the same; that, in addition, the stipulation is invalid as an endeavor to transfer an existing interest in land other than by deed.

After the case had been remanded, certain proceedings were had in the lower court whereby additional real estate was inventoried and appraised at $188,671.75. This additional real estate included land standing in the name of the three children. Certain pieces of real estate standing in the name of certain of the children were conceded by appellant to be the separate property of E. A. Witte.

On or about November 24, 1945, the executor filed a corrected final account and report and petition for distribution. In this account, the executor set out the stipulation, hereinbefore referred to, and all the real estate which had been inventoried and appraised in the E. A. Witte estate, including that which had been inventoried and appraised since the opinion of this court. The report showed that the appraised value of all the real estate ready for distribution under the stipulation was $399,755.01, or $188,-671.75 more than as shown by the original inventory. The report also showed certain deductions to be made amounting to $83,646.42, leaving a balance of $316,108.59, upon which to compute the distributive shares of Mrs. Witte and the three children.

Mrs. Witte filed exceptions to the corrected final account. These exceptions go to the claimed failure of the executor to schedule as receipts belonging to the estate the sum of $35,974, the receipts from the land scheduled in the additional inventory during the pendency of the administration proceedings, and to the failure of the executor to demand and receive the landlord's interest in the land for the year 1945.

Inasmuch as appellant, on this appeal, has raised none of the questions raised by her exceptions, we assume she was satisfied with the manner in which they were taken care of by the order of distribution.

The matter came on for hearing on the corrected final account and report and petition for distribution, and the

exceptions thereto, at which time quite an extended hearing was had. Witnesses were sworn, and there were extended arguments by counsel. No question was raised by appellant or contention made that the executor had not listed, in the corrected final account, all the real estate which belonged to and which should have been inventoried and appraised in E. A. Witte's estate, nor was any question raised by appellant relative to the personal property, other than to certain sums which appellant contended the executor should have shown as due the estate from rents on certain of the property during the years 1942, 1943, 1944, and 1945. However, by the decree of distribution, such rent matters were adjusted, and no question is raised thereon on this appeal.

Appellant also raised the question of the validity and binding force of the stipulation. As shown by the statement of facts, in a colloquy between court and counsel, the court stated: "She [Mrs. Witte] is bound by this stipulation. The supreme court has said so and there is no escaping it." Distribution was made pursuant to the stipulation. The trial court found that all of the property set out in the decree was community property, with the exception of certain real estate deeded to certain of the children, which last-named pieces of real estate appellant conceded did not belong to the estate. The court decreed that all of such real estate be distributed to the three children, share and share alike, and that there be distributed to Mary Witte the sum of $86,213.22 in cash, being a one-fourth interest in the net value of the estate, plus the sum of $13,844.03, covering one fourth of all crops raised upon the land during the probate of the estate, or a total of $100,057.25,

". . . which sum the executor is charged with paying to the full amount of cash in its possession after all costs and expenses have been deducted, and that Adam Witte, Clarence Witte and Eva Kerns are charged with paying any deficiency in accordance with the amount of crops that each has received, and that the same shall be a lien upon all lands in this estate until fully paid."

It also appears from the statement of facts that there have been certain adjustments made in regard to state and Federal taxes which were the subject of controversy on the first appeal.

The present appeal is from the decree of distribution last above referred to. It is assigned by Mary Witte, appellant, that the court erred in distributing the community property of Mrs. Witte in her husband's estate for the reason that the court had no jurisdiction; that the court erred in refusing to set aside the stipulation for fraud; that the court erred in charging against Mrs. Witte inheritance taxes, as there were no taxes against her share of the property.

Counsel for appellant makes the broad general statement that distribution of property which does not belong to the deceased is not within the jurisdiction of a probate court, and jurisdiction cannot be given by consent. While appellant admits that community property goes into probate for the purpose of paying expenses, she contends that there the jurisdiction of the probate court ends. More specifically, appellant argues that in January, 1942, after the death of her husband, Mrs. Witte owned half of the community real estate, approximately eighteen hundred acres, and this was her separate property; that the estate of E. A. Witte also owned eighteen hundred acres; that Mrs. Witte could do with her property what she wished; that the children now claim that she gave part of that eighteen hundred acres to them, and she claims she did not; that whether or not that is true, it has nothing to do with the estate, as the estate still has its own eighteen hundred acres, and, if she gave part of her eighteen hundred acres to her children, they did not inherit it from the estate, and there is no reason for the estate to distribute it.

We appreciate that much of what is stated above by appellant is true as a general rule and might be applicable here were it not for the stipulation above referred to.

At this point we desire to refer to the case of *In re Elliott's Estate,* 22 Wn. (2d) 334, 156 P. (2d) 427, wherein we referred to Rem. Rev. Stat., § 1533 [P.P.C. § 192-19],

and stated that that section authorizes the probate court, upon the hearing of a final account and report, to determine who are the legatees or heirs *or persons entitled to have the property distributed to them,* and that, in order that the court may be enabled to accomplish that purpose, the statute specifically provides:

" 'The court shall have authority to make partition, distribution and settlement of all estates in any manner which to the court seems right and proper, *to the end that such estates may be administered and distributed to the persons entitled thereto.*' "

We are of the opinion that appellant is foreclosed from raising, on this appeal, the question of the validity and binding force of the stipulation. She is prohibited from so doing because of our former opinion, which became *res adjudicata* of that issue. The stipulation was considered by the lower court, where the record was made on the former appeal, the former decree of distribution was made thereunder, and still appellant raised no question in regard thereto. It would seem to need no citation of authority to support the conclusion that, having failed to raise the question on the former appeal, appellant is bound by our former decision and cannot now raise the question on this appeal. See *Woodland v. First Nat. Bank,* 124 Wash. 360, 214 Pac. 630; *Anderson v. Nat. Bank of Tacoma,* 146 Wash. 520, 264 Pac. 8; *Globe Const. Co. v. Yost,* 173 Wash. 528, 23 P. (2d) 895. The case last cited concludes with the following paragraph:

"The matter in controversy here was included within the matter in controversy there [referring to a former case]. It either was, or else could have been, adjudicated in the former action. That judgment, therefore, became *res judicata* of the issues and matters here presented."

In view of appellant's contention and argument that, the property here involved having been determined to be community property, one half thereof became the separate property of Mrs. Witte upon her husband's death and, under the stipulation, was not subject to distribution by

the probate court, we shall discuss the question, notwithstanding our conclusions hereinbefore stated.

It is true that this court held in the former opinion that certain property inventoried in the estate of E. A. Witte, which was claimed to be his separate property, was in fact community property. But we stated in that opinion:

"It is apparent from what has thus far been related that, if the executors' final report is complete and correct, and if distribution is made as directed by the final decree, Mrs. Witte will have received all that she is entitled to receive, because of the *stipulation* [italics ours] into which she entered at the beginning of the probate proceedings, for, regardless of whether any part of the estate *as inventoried* is now held to be *community property or separate property* [italics ours], she is in either event to be paid a one-fourth part thereof in cash."

It is plain to us from the opinion in the former appeal that our determination that the property inventoried as the separate property of E. A. Witte was in fact community property, and the determination by the trial court after the cause was remanded that the additional property brought into the estate and inventoried was community property, did not decide that Mary Witte was entitled to one half of such community property by virtue of her community rights, but that such determinations were made by this court and by the trial court only for the purpose of determining what property was to be used as a basis for arriving at the value of Mary Witte's one-fourth interest in the net estate, under the provisions of the stipulation. In other words, by her stipulation she waived any and all community rights she might have had in the property to be inventoried, and thereby agreed to accept in lieu of any such rights one fourth of the value of such property in cash after the payment of all inheritance taxes, income taxes, claims, and costs of administration. Therefore, if Mary Witte could lawfully make such an agreement, the court had jurisdiction to make distribution in accordance therewith.

We are satisfied that, by the great weight of authority under the "family settlement" doctrine, such stipulation

was supported by sufficient consideration and was not induced by fraud, and that the court had jurisdiction to make distribution of the estate in accordance therewith.

■ The rules applicable to family settlement are discussed at length in the case of *Warner v. Warner,* 124 Conn. 625, 1 A. (2d) 911, 118 A. L. R. 1348, and in the annotations beginning at p. 1357. It is quite generally stated that family settlements are favorites of the law. The opinion cites 12 Am. Jur., Contracts, §§ 85, 86, 87, and states:

"The settlement by compromise of will contests and family disputes, being calculated to avert contentions, adjust doubtful rights, contribute to peace and harmony, protect the honor of the family, and avoid litigation, is not in contravention of public policy, and, when fairly arrived at, is favored both in law and in equity."

■ Relative to forbearance to contest as constituting sufficient consideration, the opinion states:

"However, the rule supported by the great weight of authority and in our opinion the better one is that in order to furnish a consideration for a compromise agreement the contest must be instituted *or intended* in good faith and based upon reasonable grounds for inducing a belief that it is sustainable." (Italics ours.)

■ In view of our conclusion that Mrs. Witte is bound by the stipulation, there is no merit in appellant's third assignment of error, as the court deducted only the inheritance taxes which, under the stipulation, it was authorized to deduct in arriving at the net estate.

For the reasons herein assigned, the decree of distribution as entered is in all things affirmed.

BEALS, C. J., CONNELLY, ROBINSON, and BLAKE, JJ., concur.